MERRITT, Circuit Judge,
dissenting.
I regard the 12-plus years of incarceration the defendant Walters received as a vast over-criminalization of the wrong in *788 volved, a sentence vastly disproportionate to the crime. Walters downloaded a group of photos from the large inventory of child porn photos on the Internet. He is not a pedophile. He has not physically abused anyone. He is a young man with a wife and children whom he has not abused. He did not, in fact, pass the photos on to anyone else; and he did not, in fact, have anything to do with their production. He paid nothing to download the photos. He did not enter the commercial market for child porn.
What he did is to look at photos that we would find disgusting and criminally produced. For someone to presumably enjoy looking at them offends us, although we do not know his state of mind for it is a strict liability crime. To assert, however, that the defendant “caused” the production of the photos fabricates “causation.” It is a rationalization arising from our disgust and disapproval.
Many of the groups of officials and experts who have looked into the problem of Internet child porn have reached the conclusion that the sentencing guidelines that the District Court and our Court have now enforced in this case should be greatly reduced. Most importantly, these groups include the Sentencing Commission itself, which has conducted an extensive study and then issued a 350 page Report in 2012 entitled “Federal Child Pornography Offenses” [available at: http://www.ussc.gov/ news/congressional-testimony-and-reports/ sex-offensetopics/reportcongress-federal-child-pornography-offenses]. The Report asks Congress to remove the harsh Protect Act provisions that ordered the Sentencing Commission in 2003 to write guidelines recommending to judges the imposition of sentences such as the 12-plus year sentence in this case. The report is based in part on the refusal of a sizeable majority of judges to follow the guidelines[1] and the opinion of experts in the field, including psychologists, medical experts and legal scholars who have studied the problem.[2] The Commission’s study arrived at the conclusion that the present child porn guidelines have “no rational basis,” are “outmoded,” do not “distinguish adequately among offenders based on their degrees of culpability,” and have “enhance- *789 merits,” like the ones in this case, that are “outmoded and disproportionate.” The disagreement with the guidelines for nonpro-duction offenders is widespread. The Report at page xxi concludes in part:
Numerous stakeholders—including the Department of Justice, the Federal Defender community, and the Criminal Law Committee of the Judicial Conference of the United States—have urged the Commission and Congress to revise the nonproduction sentencing scheme to better reflect the growing body of knowledge about offense and offender characteristics and to better account for offenders’ varying degrees of culpability and dangerousness.
Unfortunately, the Department of Justice has not adequately communicated its position to its United States Attorneys, and so we keep getting cases like this one.
It seems obvious that nothing is going to soon change the injustices such as this one that are going on every day in the federal courts—unless the courts themselves find a solution that at least ameliorates the problem for the time being. Defense counsel in this case did not provide the courts with an adequate rationale for changing the guideline status quo and did not point out the Report to the trial judge or to us. He simply argued that the guideline sentence in this case is “unfair” and violates “due process,” but without further elaboration.
There is a partial solution available. The Supreme Court has recently summarized in Miller v. Alabama, — U.S. -, 132 S.Ct. 2455, 2468, 183 L.Ed.2d 407 (2012), the constitutional principles that should guide us when a sentence is extreme and lacking any “rational basis,” as the Sentencing Commission and other experts in the field have found:
The Eighth Amendment’s prohibition of cruel and unusual punishment “guarantees individuals the right not to be subjected to excessive sanctions.” That right, we have explained, “flows from the basic ‘precept of justice that punishment for crime should be graduated and proportioned’ to both the offender and the offense.” “[T]he concept of proportionality is central to the Eighth Amendment.” And we view that concept less through a historical prism than according to ‘the evolving standards of decency that mark the progress of a maturing society.’ (Omitting citations.)
If ever a sentence should be labeled “excessive” and “out of proportion” to the “offender and the offense,” and outside “evolving standards of decency,” it is the 12-plus years of imprisonment imposed in this case on a young man and his family because he downloaded a group of deviant and disgusting child porn photographs. I am sorry that our panel has not acted to at least reduce the sentence to the five-year mandatory minimum and to express its disagreement with this unjust sentence.

. A majority of federal judges reject the receipt and possession guidelines in both theory and practice. More than two-thirds of judges responding to a Sentencing Commission survey in 2010 believed that the guideline ranges and applicable mandatory mínimums for those offenses "were too high.” 2012 Report at 11 n. 64. After accounting for deliberate undercharging by some U.S. Attorneys and plea agreements based on factual guideline stipulations, as well as departures and variances by judges, the result was that almost four out of every five offenders were sentenced below those dictated by a mechanistic guideline calculation like the one in this case. Id. at 225 (figure 812). In light of this widespread judicial rejection of the guidelines, the sentencing judge's conclusion that a guideline sentence was appropriate for Walters because there was "[njothing remarkable about his situation” illustrates the failure of these guidelines when judges defer to the algorithm without considering whether the result is just. The widespread nullification of these guidelines means that "[i]t is ... not that a defendant who is sentenced by a judge willing to reject the guideline is lucky ... it is more apposite that the defendant who is sentenced by a judge following the guideline is unlucky.” Melissa Hamilton, Sentencing Adjudication: Lessons from Child Pornography Policy Nullification, 30 Ga. St. U.L.Rev. 375, 460 (2014).

. See, e.g., 2012 Report at 73-106 (describing child pornography offender behavior); id. at 169-204 (describing research on prior criminal sexually dangerous behavior by non-production offenders); id. at 277-87 (assessing best practices for treating disorders associated with child pornography offenders); id. at 312-20 (summarizing "Recommendations to Congress” and empirically supporting conclusions contradicting underlying premises of the current guidelines).